In re TELEVISION STUDIO SCHOOL OF NEW YORK, Germain School of Photography Inc. and the Center for the Media Arts, Debtors.

Bankruptcy Nos. 85 B 11344 (TLB), 85 B 11346 (TLB).

United States Bankruptcy Court, S.D. New York.

July 21, 1987.

Certilman, Haft, Lebow, Balin, Buckley & Kremer by John Preefer, New York City, for debtor in possession.

Jacobson & Colfin by Jeffrey Jacobson, New York City, for Howard Hirsh.

MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION TO TEMPORARILY ENJOIN SUIT PURSUANT TO 28 U.S.C. § 959

TINA L. BROZMAN, Bankruptcy Judge.

The Center for the Media Arts, debtor and debtor-in-possession ("Debtor") in this chapter 11 proceeding, asks us to stay pursuant to 28 U.S.C. § 959(a) the commencement and prosecution of a post-petition copyright infringement suit by Harry Hirsh, a creditor of the Debtor ("Hirsh"), until the Debtor's plan is confirmed. Hirsh initially sought by notice of motion to lift the automatic stay pursuant to 11 U.S.C. § 362 so that he might proceed to file suit against the Debtor for both pre-petition and post-petition infringement. The Debtor opposed. Oral argument was entertained on July 14, 1987 at which time the Debtor orally requested issuance of a stay.[1]

The barebones motion to lift the stay asked only for leave to commence an action for an injunction, and not for damages. Counsel suggested during oral argument, however, that he was intending to seek damages for at least the pre-petition period. Apparently the Debtor's counsel so understood the request for counsel countered Hirsh's request with the argument that any claim for damages arising from pre-petition infringement was time-barred, not having been asserted in Hirsh's proof of claim. Hirsh contended that his proof of claim was sufficient to encompass a claim for damages. The court directed the parties to brief the issue. In any event, there is no need to modify the stay with respect to any claim for damages; if, indeed, such a claim is not time-barred, it may be litigated here. Had an action been commenced prior to bankruptcy in another forum, we might have allowed it to proceed to judg-

---

1. We may properly consider an oral motion when all parties are placed on notice of the nature of the motion and the identity of the movant. *See A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146, 149 (2d Cir.1984).

ment but, in the absence of any action, modification of the stay is unwarranted.

The post-petition infringement claim, by definition, is not protected by 11 U.S.C. § 362. Thus the Debtor concedes that it is subject to suit by reason of 28 U.S.C. § 959(a). Nonetheless the Debtor asks us to exercise our equitable power to stay until confirmation of the Debtor's plan the prosecution of a copyright infringement action pursuant to 28 U.S.C. § 959(a). By way of justification for such a stay the Debtor points to the severe effect on its reorganization which would result from defending a suit at the present time. Section 959(a) [2] provides:

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

On its face, this statute seems to be aimed toward conflicting goals. The first sentence allows suit against a debtor-in-possession in a non-appointing court, without leave of the appointing court. The second sentence prevents such suits when "necessary to the end of justice." These two sentences can, however, be read harmoniously to further the policy behind each.

The first sentence is intended to render debtors-in-possession amenable to suit in a non-appointing forum on causes of action arising in the ordinary activities of the company in reorganization. *See American Brake Shoe & Foundry Co. v. Interborough Rapid Transition Co.*, 10 F.Supp. 512 (S.D.N.Y.1935), *aff'd*, 76 F.2d 1002 (2d Cir.1935). Prior to the enactment of section 959(a) the Supreme Court stated in

*Davis v. Gray*, 83 U.S. 447 (16 Wall.), 21 L.Ed. 447 (1873) that a receiver could not be "sued touching the property in his charge, nor for any malfeasance as to the parties, or others" without leave of the appointing court. *Id.* at 452, 21 L.Ed. 447. Subsequent decisions, following this lead, dismissed various suits against receivers.[3] In one such suit, Justice Miller wrote a strong dissent stating that "it is no part of the duty of courts of law to deny to suitors properly before them the trial of their rights, which justice requires and the Constitution and the law guaranty." *Barton v. Barbour*, 104 U.S. 672, 679, 26 L.Ed. 672 (1881). The predecessor to section 959 was written for the purpose of enacting that dissent. *McGreavey v. Straw*, 90 N.H. 130, 5 A.2d 270, 276 (1939); *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 399 (9th Cir.1970). The first sentence of section 959(a) codifies that dissenting view and ensures that a debtor-in-possession can be sued in a court other than the appointing one, without leave, for actions arising out of the debtor's business.

The policy behind the second sentence, however, is to limit the seemingly unfettered power to bring suit against a debtor-in-possession, where to do so would significantly interfere with the orderly administration of the debtor's estate. Thus, while it essential to allow most of these suits to proceed without leave, there will inevitably be instances when to allow a suit of this type would substantially impede the reorganization of the debtor. As a result, Congress provided the second clause of section 959(a) which empowers the appointing court to use its discretion so as to avoid an unjust result. The standard which has been employed under section 959(a) is that the bankruptcy court must "exercis[e] sound discretion [and] find [ ] the action would embarrass, burden, delay, or otherwise impede the reorganization proceedings." *Jaytee-Penndel Co. v. Bloor* (*In re Investors Funding Corp.*), 547 F.2d 13, 16 (2d Cir.1976). *See Diners Club, Inc. v.*

---

2. The predecessor to § 959(a) was § 66 of the Judicial Code (1911), 28 U.S.C. § 125 (1940).

3. *See,* e.g. on tort claim against state receiver, *Peale v. Phipps*, 55 U.S. 393 (14 How.), 14 L.Ed.

459 (1852); suit for injuries incurred on railroad operated by receiver, *Barton v. Barbour*, 104 U.S. 672, 26 L.Ed. 672 (1881).

*Bumb*, 421 F.2d 396, 400 (9th Cir.1970); 6 L. King, Collier on Bankruptcy, ¶ 3.31[2] (14th ed. 1972).

In the present case, the Debtor has filed a plan and obtained a date for a hearing to consider approval of its disclosure statement. The achievement of this procedural milestone took an unusual and concerted effort by all of the parties in interest in the case; only a few short months ago, the Debtor and its affiliated debtor companies were indebted to various taxing authorities for some $600,000 of post-petition taxes and the court was conducting evidentiary hearings to determine whether the cases should be converted to chapter 7. Through the graces of a post-petition lender and hopeful funder of a plan, which has lent its apparently considerable management expertise to the Debtor, the Debtor has rebounded and filed with the aid of its creditor constituencies a plan for itself and the related debtors which is likely of confirmation. To disturb the very delicate balance which has allowed this to occur might well be to doom the reorganization of all three debtors entirely, to the very great detriment of their creditor bodies as a whole. The Debtor's management would be forced to divert its attention away from the reorganization process to focus on defending this lawsuit. It would be forced to incur the expense of special counsel at a time when it can ill afford to, as its revenues have already been allocated to retirement of its post-petition tax liability and to the funding of its plan. Further, because Hirsh claims the infringement began prior to the Debtor's filing of its chapter 11 petition, without Hirsh having instituted an action, it seems that immediate commencement of an infringement action is not essential. To have Hirsh wait until the time this plan is either confirmed or denied confirmation would not greatly prejudice him. Inasmuch as this Debtor will continue to operate if its plan is confirmed, any small prejudice to Hirsh which may result from a delay in obtaining an injunction may be redressed by an award of damages. If the Debtor ceases operating, the need for an injunction will evaporate. Therefore, in view of the proximity of this Debtor's prob-able reorganization and the prejudice, difficulty and embarrassment that would result by allowing Hirsh to prosecute at this time, we should exercise our sound discretion to grant the Debtor's oral motion pursuant to section 959(a).

We note that we have the power to issue a stay pursuant to 11 U.S.C. § 105 as well, because of our ability to consider matters concerning the administration of the estate. 28 U.S.C. § 157(b)(2)(A); *see generally Manville Corporation v. Equity Security Holders Committee (In re Johns-Manville Corporation)*, 801 F.2d 60, 63–64 (2d Cir. 1986).

Accordingly, Hirsh is hereby enjoined and restrained from commencing or prosecuting an action against the Debtor arising out of the Debtor's alleged post-petition copyright infringement until the Debtor's plan of reorganization is confirmed or denied confirmation. Notwithstanding the granting of the oral motion, should consideration of the Debtor's disclosure statement presently scheduled for August 12, 1987 be delayed by more than three weeks, or should a hearing on confirmation of the plan not be held by October 15, 1987, Hirsh may move for dissolution of the restraint upon him.

IT IS SO ORDERED.